Case No. 23-3336, USA v. Terris Chandler Baker. Court of argument is about to proceed 15 minutes per side. Mr. Schroeder, you may proceed for the appellant. Good morning, your honors. Kyle Schroeder on behalf of the appellant, Terris Baker, and may it please the court, I'd like to reserve three minutes for rebuttal. So there are three primary issues on appeal on this matter. The first is whether the court erred in admitting a 2017 phone call between Mr. Baker and a government informant into the record. The second is whether the court erred by improperly analyzing Mr. Baker's co-defendant's motion to compel an IRS agent to testify at trial. And the third is whether the court erred by improperly compelling Mr. Baker into withdrawing his motion for new counsel at sentencing. I plan to spend the majority of my time today on issue number two, which is the Toohey issue, but I'd be glad to answer any questions the court may have on issues one and three. You should proceed with your argument. We'll intercede with questions as we have them. Thank you, your honor. So in the United States v. Ritchie, the Fourth Circuit analyzed a case similar to the one at hand. In that matter, the defense followed Toohey, subpoenaed a DEA agent to testify at trial, and then the government in response objected to that testimony and argued that the testimony was privileged and that the DEA agent could not be compelled to testify. The court there agreed with the government that the testimony was privileged and declined to compel the agent to testify. On appeal, the Fourth Circuit held that that was error because what the district court should have done was conduct a Sixth Amendment analysis. That is, the district court should have determined whether that testimony that was sought from the DEA agent was material and favorable to the defense, and if so, in a companion case, United States v. Rivera, the Fourth Circuit held that the United States' invocation of privilege must give way and that the government either needed to allow the witness to testify or dismiss the prosecution. And that same thing should have occurred in this matter, but it did not. So here on day six of trial, the defense indicated that it was seeking to subpoena Special IRS Agent John O'Boyle to testify. Which defense are you talking about? I'm talking about Mr. Baker's co-defendant, Mr. Vorbal. Correct, and not Mr. Baker. See, the problem I have is that Mr. Baker's counsel at trial did not compel the – or file a motion to compel the witness to testify. In fact, did not subpoena the witness and said, I don't know what position I would be in to raise an objection. So not only did not subpoena, did not compel, did not object. So I think that that makes this case different from the other ones, and you're trying to say the objection from co-counsel, co-defendant, somehow should be imputed to your client, and I think that's kind of a real stretch. I have problems saying that you can impute the objection of a co-defendant to your client. Yes, Your Honor. So as an initial matter, I'd point to United States v. Cassidy. That's a Sixth Circuit case in which this court has made clear that there are circumstances in which one co-defendant's objection – You can join objections of co-defendants. You can piggyback on them. But to say that whatever objections co-defendant makes are hereby imputed to all defendants in a multi-defendant trial, I don't think so. Thank you, Your Honor. And I would just point again to that case and many others in this circuit in which it's been held the opposite. That all objections by any defendant to anything, one co-defendant objects to one piece of evidence, everybody else doesn't join it, that creates reversible error for everybody. That's your position. No, Your Honor. So in those older cases, United States v. Cassidy specifically, the court determines whether – for the other co-defendants to have to make the exact same objection as their fellow co-defendant. Well, how about when the court actually asks the co-defendant, okay. Now your co-defendant A has made an objection. Defendant B, do you join the objection? What's your position on it? And co-defendant B says, well, I have no position on it. So how can you say that is joining an objection when the answer is I have no position? So I would first respond that I think saying I have no position at the very worst would be a forfeiture and not a waiver because it's not intentional relinquishment of a known right. And then I would also point the court to United States v. Pardo, which is a District of Columbia circuit court case from 1980. And that was one of the only cases I could find when researching this case in which the preservation of a co-defendant in the motion to compel context has been analyzed. And the court there held that one co-defendant's statement that it also had an interest in examining the witness was sufficient to have preserved that on appeal based on the other co-defendant's objection. There, there was a third co-defendant who pled the fifth, did not testify. One co-defendant stated that he made an objection in the motion to compel there. Some other co-defendants did not indicate they had an interest in examining that witness, while another one did. And that's when the District of Columbia circuit held that, yes, that was sufficient for preservation. That's not Sixth Circuit preservation? Not Sixth Circuit, Your Honor, and I don't believe there's a Sixth Circuit case on point. Okay. What relief are you seeking? Are you trying to get it remanded to see what this witness is going to say? Or what, is there some other relief you're seeking? So, for the TUI issue specifically, yes, Your Honor. We're seeking a remand. We're not seeking a reversal at this point, just a remand. I think what should have happened at the district court is the court should have analyzed over the government's objections that TUI had not been followed. The court should have first determined whether TUI had been followed. There's nothing in the record that the court analyzed that issue. It seems to have just accepted wholeheartedly the government's assertion that TUI hadn't been followed. So, I believe that should have happened first, and I would ask this court to make that legal determination as to whether TUI had been followed. And then, I would ask the court to remand to the district court for a determination of whether Mr. O'Boyle's testimony would have been material and favorable to Mr. Baker. And if the court there finds that the testimony would have been material and favorable, I believe that that would have been a Sixth Amendment violation, and his conviction should be vacated at that point. But, theoretically, the district court could hold that his testimony was not material and favorable, and then his conviction would stand. It's almost like you're asking for a new trial. You want all these legal rulings and determinations to be made on remand that should have been made previously. So, I guess you would have to show us that there was a legal error by the trial judge in not ruling on these things when the matter was with the trial judge. So, what legal error did the trial judge make in not pursuing or developing the TUI matter in the absence of the defense attorney raising the issue more apparently? Yes, Your Honor. So, my position is that Mr. Baker is permitted to rely on his co-defendant's objection, and that at that point the court should have been on notice that it needed to analyze whether TUI had been followed. And that was the error. The first error there was that she did not analyze whether TUI had been followed. So, the government at trial argued that TUI had not been followed because there was no written request for testimony and because a subpoena had not been filed. And it's our position that both of those requirements were followed and that the court did not analyze whether they were followed, which then caused her to not conduct this materiality analysis under the Sixth Amendment. Well, since a subpoena is not expressly required under the statute, with sufficient notice provided to satisfy the requirements of the statute, that the defendant wanted the IRS agent to testify. And in the absence, if not, in the absence of that notice, where does that leave you with respect to now raising the TUI issue on appeal? Your Honor, I... I mean, there was no written notice given to the government or directly to the IRS, as I understand it. There's no need for this agent to testify under TUI. I agree, Your Honor. And I think my response to that is the government has turned TUI into this strenuous procedure that requires a notice given well in advance, and they ask for written affidavits in support of the TUI request, and they make other assertions. And I think that may be colloquially followed in the Sixth Circuit, but it's not what the regulation requires. And so I don't know exactly how over time these regulations have been turned into this strenuous process, but both the DOJ and the IRS's TUI regulations permit situations like the one at hand in which the need for testimony arises at trial. So under 1623C, the DOJ's TUI regulation, it specifically states that if an affidavit is not feasible, then a statement is permitted, and a statement is enough to give notice in that matter. And it's our position that in the middle of trial is a situation in which drafting an affidavit is not feasible. And then the same goes for the IRS's TUI regulation. But there could have been a written demand. The defendant could have given a letter to the government with a written demand, and if it wasn't feasible to do an affidavit, I mean, there are all kinds of ways you could satisfy the notice requirement, wouldn't you think? I agree, Your Honor. I agree that the defense could have given a written letter that was not an affidavit, but I would reiterate that I don't think that's what the regulation requires. And so I think the regulation permits oral notice, which was what happened here. And so the government may have wished to have had written demand, but the defense gave oral notice on day six of trial. The AUSA relayed to the court that it had told both the IRS and the DOJ exactly what the defense had proffered. I just think that the government is now on the back end saying, well, you needed to have given a written request, which is, you know, that's without regulatory authority. I think if the DOJ or IRS wants to have written requests in this scenario, then they need to go through the proper amendment process and amend the regulation to explicitly require that. The defense here followed what the regulation said. What do you expect to get from this witness? The reason that you would want this to go back to see if something more needs to be done to obtain the IRS agent's testimony is that the agent presumably would have material and favorable testimony to support your client. What is the testimony that you would need from the agent? I guess my question is, before we would send something back under these circumstances, do you need to make some sort of showing or provide some sort of explanation to us on the court of appeals here as to what the testimony would be or why that testimony is needed? What's the relevant and material and favorable testimony that your client is lacking that the agent would testify to specifically to send it back? And if you can't explain that, wouldn't that be a problem for your request here? So I would initially state that I think on appeal, we're bound by the record. And the reason why this is not clear from the record is because the court did not permit Mr. Baker or his counsel to further demonstrate why Mr. O'Boyle's testimony was needed. So based on the record, from Mr. Baker's perspective, it was not examined. And I think that's why a remand needs to occur. Now, what was said on the record? You don't know. It's not in the record. But as the attorney for the defendant, you should know why the testimony is needed. So I guess I'm asking you why we would need to send this back. What's the testimony that's needed here? Yes, Your Honor. So the defense brought up several issues before the trial court as to why Mr. O'Boyle was needed. They made some arguments about attacking the credibility of Mr. Mace, who was the government informant slash co-defendant in this case. Mr. Mace had made some statements to the IRS about why he had conducted this alleged scheme that seemed to conflict with his testimony on the stand. And so the defense wanted to seek clarity from the IRS agent who that statement was told to. The defense also put on the record that there was—it insinuated that there might have been a Fifth Amendment violation. So Mr. Mace, the government informant slash co-defendant, was initially approached by the IRS. And when he was approached, he informed them that he was represented by Mr. Rohrbaugh, who ended up being his co-defendant in this case. And at that point, the defense questioned on the record whether the IRS agent had stopped examining him at that moment. And so it was hinted on the record that the defense was possibly pursuing a fruit-of-the-poisonous-tree type of argument. But once again, that just was not given the proper opportunity to be developed. All right. Judge Seiler, did you have a question? I saw you. Okay. Do you have any further questions before I step down? I have none. Thank you. Thank you, Your Honor. Good morning. May it please the Court, Matthew Call for the United States. We would ask this Court to affirm the judgment because Mr. Baker has not shown any reversible error in the three issues that he raises. Because my friend, Mr. Schroeder, has focused on the TUI issue, I will focus on that unless Your Honors have questions about it. But we believe Judge Pearson clearly followed the proper procedures in admitting the Rule 404B evidence and that she conducted the thorough and proper inquiry and there were not grounds to appoint new counsel. Regarding the issue surrounding Special Agent O'Boyle, we think that this issue does not merit any kind of relief for several reasons. First, as Judge Griffin pointed out, we believe it's waived. The defendant had an opportunity to preserve any kind of objection on this issue and he did not do so. First, when this was discussed before, while the government's case was concluding, there was a lengthy discussion at approximately page 3,310 of the record and that was only with Mr. Rohrbaugh's attorney, Sam Amendolara. When the judge turned to Mr. Hartwig, who was lead counsel for Mr. Baker, and asked if he had anything to add, he said, I have nothing to add. After the government rested its case, there had not yet been any subpoena, any compliance with the TUI regulations, Mr. Hartwig, representing Mr. Baker, was first up. He rested. To use the term that he used, he squatted it. Page ID 3477. He rested his case. He exercised his constitutional right not to present any evidence. It wasn't until Tuesday afternoon, after Mr. Amendolara, who represented Mr. Rohrbaugh, had called his one witness, that there was any further discussion of this. So to say that somehow there had been earlier compliance with TUI is incorrect. In fact, Mr. Amendolara, when asked directly by Judge Pearson at page 3305 if he had complied with it, this was on day six, he said, I have not. On day seven, the only discussion involved whether he had subpoenaed the witness. We're not sure if he did. The record certainly is not well developed enough to establish it. We have defense counsels proffer that a subpoena was left under a door at the IRS. There's no record what door, if that was Special Agent O'Boyle's door, which IRS office, what time. So we don't think there's been compliance with the subpoena by the co-defendant. There was no even attempt to make a subpoena by Mr. Baker. When it comes to the TUI regulations, which we advised them on Friday afternoon, we have no authority. We can't force an IRS agent to testify. You've got to comply with that. They had the rest of the day Friday. They had all weekend. They had Monday. Nothing. There was no attempt to comply with the TUI regulations until Tuesday afternoon at approximately 2.30, based on the time stamps in the transcripts. And that was the first time there was any indication what they were requesting Special Agent O'Boyle's testimony for. The government, at Judge Pearson's request, attempted to facilitate it. We did not, as Mr. Schroeder suggested, try to use this as some Byzantine regulatory shield and prevent them from doing that. The AUSA immediately from the courtroom, it appears, either sent an email or stepped out and made a phone call and passed that information along as quickly as possible. Judge Pearson asked us to try and facilitate review, and we did. Compliance with the TUI regulations is not that difficult. The defense didn't do it. Certainly, Mr. Baker made no attempt by himself to do it. Mr. Warbaugh also didn't complete it. And we don't believe that he can bootstrap his claim to Mr. Warbaugh's. This is not like an evidentiary objection in a five-defendant trial where the judge might not require every lawyer to stand up and say, I join in that objection. This is, at its core, a constitutional claim. Was he denied his Sixth Amendment right to present a defense to compel witnesses' attendance? Constitutional rights are personal. Just like in the Abood case, this court did not allow, I forget which brother it was, Michelle Abood, to bootstrap himself to Elie Abood's claim. Just like in a Fifth Amendment context, if one defendant gives an involuntary statement, the other defendant can't rely on it, the same would hold true for Sixth Amendment. So I'm not sure that it is preserved and that he can bootstrap his claim to Mr. Warbaugh's. And frankly, he said, I don't know what position I would be in to make an objection. Judge Pearson turned, inquired if he was joining in this request. He said it was not his battle to wage or words to that effect. And I don't know what position I would be in to raise an objection. Ultimately, this claim comes down to whether Mr. Baker was denied the right to cross-examine a witness that the government didn't call, chose not to call, and that the defendant didn't call. We don't think that rises to any level that would require a new trial or a remand for an evidentiary hearing in any way, shape, or form regarding what Special Agent O'Boyle would say. Under the Valenzuela case in the Supreme Court, the defense has the obligation to show that the evidence would have been both material and favorable. There's been no showing of that. And in fact, if there's any further proof of that, look at Mr. Warbaugh. Mr. Warbaugh got a hung jury at the first trial where he was with Mr. Baker. At his retrial approximately nine months later, having nine months to comply with the TUI regulations, he didn't call Special Agent O'Boyle at the second trial. And you can tell that from the court's order denying Mr. Warbaugh's motion for new trial after the second trial. That was document 198, page ID 4399. For these reasons, Your Honor, we don't think that there was any reversible error shown. We would ask this court to affirm the conviction in all respects. And I would invite any other questions. Thank you. I have no questions. Thank you very much. We'll hear rebuttal at this time. Yes, Your Honor, just a few minutes on rebuttal. So I would first like to rebut the government's assertion that TUI was not followed. On day six of trial, after Mr. Warbaugh's counsel indicated that he had not followed TUI, the government then gave him the opportunity to make the oral proffer. So the government focuses on that earlier statement. We're saying that after that statement was made, the correction was made. He made the oral proffer. TUI was followed. And then regarding the subpoena issue, for all the reasons I presented in the briefing, TUI does not require a subpoena. It permits other demands to be made, which is defined as anything that's not a subpoena. So TUI was followed in this scenario. And this was a situation in which once TUI was followed, the court was required to make this materiality and favorability determination, which would have required permitting the defense to put more evidence on the record. Regarding the government's reference to the Abood case, I would like to point out that that case did hold that one co-defendant's objection did not preserve the other co-defendant's objection. But that case was specifically about motions that are required to be filed under 12b-3. So think suppression motions and things that are pretrial. This objection occurred in the midst of trial. It was a motion to compel. It's not a motion that's listed under Rule 12. And so we would argue that that case is distinctive for that reason. We'd point the court back to United States v. Pardo. And then finally, regarding the government's reference to the Valenzuela case, it states that it's the defense's burden to show materiality and favorability. Well, it's our position that we could not do that because the record was not developed before the lower court and that a remand is necessary for us to have the opportunity to properly make that argument. And then regarding Mr. O'Boyle not being called at Mr. O'Rourbaugh's second trial, I think that that is an irrelevant assertion to this matter. I mean, that's a trial strategy decision one. And secondly, there had been nine months in between. I'm not sure what information that the defense on that side learned in that period, but we're focused on the first trial, that moment in time, whether he was material and favorable at that time. That's all I have, Your Honors. Thank you very much. There seems to be no further questions. Mr. Schroeder, thank you for your service under the Criminal Justice Act and for representing the client in this matter. Appreciate it. This was actually my first appeal I filed, so I'm glad to get an oral argument and to have the opportunity to do this. Thank you. Thank you. You did a good job. There being no further cases, the argument court may be adjourned.